UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:11-cr-00025-JAW |
| | ) | |
| PAUL CORBIN | ) | |

**ORDER DENYING DEFENDANT'S
MOTION FOR DISQUALIFICATION**

The Court denies a criminal defendant's motion to disqualify a judge based on statements he made to a newspaper reporter about the dangers of methamphetamine.

## I.    PROCEDURAL AND FACTUAL BACKGROUND

On February 24, 2011, a federal grand jury issued a three-count indictment against Paul Corbin charging possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1), possession with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. 841(a)(1), and possession of a firearm by an unlawful user of scheduled drugs in violation of 18 U.S.C. § 922(g). *Indictment* (Docket # 10).

On October 3, 2011, Mr. Corbin moved for recusal, pursuant to 28 U.S.C. §§ 144, 455, asking that I disqualify myself from presiding on this matter. *Def. Paul Corbin's Mot. for Disqualification, with Incorporated Mem. of Law and Accompanying Aff., Cert. of Good Faith, and Exs.* (Docket # 28) (*Def.'s Mot.*).

The primary basis for Mr. Corbin's motion is a statement I made concerning the risks posed by drug dealers crossing into the state of Maine from Canada

published in the Morning Sentinel, a Maine newspaper, on February 3, 2011. *Def.'s Mot.* at 9. The newspaper article was about new federal legislation enhancing border security in Maine; it quoted a press release from Senator Susan Collins, which confirmed her efforts to address security flaws along Maine's border to combat the "growing drug-smuggling trade" between Maine and Canada. *Id.* at 8. The newspaper article makes two references to me. First, the article says that I "see[] the effects of a 'porous' border with Canada in my Bangor courtroom," including "a growing number of drug-trafficking cases, particularly involving dangerous methamphetamine." *Id.* at 9. The article's second reference to me is:

> Woodcock said in a phone interview that he is particularly concerned about methamphetamine dealers coming across the border, saying that Maine—rural, majority white and poor—has 'all the characteristics of a state vulnerable to methamphetamine. Once it gets here, if it does, it will be very, very difficult to eradicate.'"

*Id.*

A second basis is that in December 2010, the Department of Justice distributed a United States Government Accountability Office report about border security to all federal judges, including district court judges, which addressed perceived issues with border security in Maine. *Id.* at 2, Ex. A.

The Government responded to the recusal motion on October 24, 2011. *Gov't's Resp. to Def.'s Mot. to Disqualify* (Docket # 33).[1] The defense replied to the Government's response on November 4, 2011. *Def. Paul Corbin's Reply to the*

---

[1] The Court inadvertently issued a decision before Mr. Corbin filed his reply. When Mr. Corbin brought this to the Court's attention, the Court vacated its Order. *Order Denying Def.'s Mot. for Disqualification* (Docket # 35); *Order Vacating Order on Mot. for Recusal* (Docket # 36).

*United States' Opp. to Def.'s Mot. for Judicial Disqualification, with Incorporated Mem. of Law* (Docket # 38) (*Def.'s Reply*).

## II. DISCUSSION

Under sections 144 and 455 of Title 28 of the United States Code, a judge may be disqualified on two possible grounds: (a) where "the judge may have a personal bias or prejudice concerning a party" or (b) where "the judge's impartiality may reasonably be questioned." *United States v. Kelley*, 712 F.2d 884, 889 (1st Cir. 1983); *see also* 28 U.S.C. §§ 144, 455. The analysis under both sections is the same, namely that recusal is required where a reasonable person would question the judge's impartiality. *Id.* This "long established" test requires that the moving party present "a factual basis for the claim that there appears to be a lack of impartiality." *United States v. Voccola*, 99 F.3d 37, 42 (1st Cir. 1996).

Mr. Corbin's motion asserts that once a party files a motion and affidavit under 28 U.S.C. § 144, "*the judge has no alternative but to recuse himself*, no matter how defamatory the charges may be and even if they are known to the Court to be false." *Def.'s Mot.* at 4-5 (quoting *United States v. Hanrahan*, 248 F. Supp. 471 (D.D.C. 1965)) (emphasis in Defendant's motion). This proposition, if true, would allow a party to force a judge's recusal simply by filing an affidavit under § 144, regardless of the sufficiency of the affidavit; as such, Mr. Corbin overstates the proper process. The First Circuit has explained that when a disqualification motion is filed, a judge is "not required to immediately recuse himself." *Kelley*, 712 F.2d at 889. Although the challenged judge "may not pass on the truth of the matters

asserted," he "must pass upon the legal sufficiency of the affidavit" forming the factual basis for the party's disqualification motion. *Id.* (citing *Berger v. United States,* 255 U.S. 22 (1921)).

A. **Personal Bias**

Recusal is required "whenever there exists a genuine question concerning the judge's impartiality." *Liteky v. United States*, 510 U.S. 540, 552 (1994) (emphasis omitted). Elaborating on this standard, the Supreme Court recently stated that the essential inquiry "is an objective one[:] . . . not whether the judge is actually, subjectively biased, but whether the average judge in his position is 'likely' to be neutral, or whether there is an unconstitutional 'potential for bias.'" *Caperton v. A.T. Massey Coal Co., Inc.*, 129 S. Ct. 2252, 2262 (2009) (holding that state appeals court judge should have recused himself as a matter of due process where chief executive officer of corporate party had contributed $3 million to judge's election campaign just prior to party's appeal of $50 million trial judgment).

Where the moving party challenges opinions formed by a judge during the performance of his judicial duties, such opinions may not form the basis for disqualification on personal bias grounds unless they exhibit a "deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky*, 510 U.S. at 555; *see also Kelley*, 712 F.2d at 889-90. While an opinion derived from sources outside of judicial proceedings may sometimes be a condition for recusal on the basis of bias or prejudice, such an "extrajudicial source" is neither a necessary nor a sufficient condition for recusal. *Liteky*, 510 U.S. at 554-55. The *Liteky* Court

went on to state that even "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Id.*

To begin, the illegal distribution of methamphetamine is a serious federal criminal offense; methamphetamine is a Schedule II drug, the possession of which is significantly penalized by Congress. 18 U.S.C. § 841(b)(1)(B)(vii). My statement that methamphetamine trafficking and addiction is "dangerous" and will be "difficult to eradicate" if it takes hold in this District amounts to no more than that drug dealing and drug addiction are undesirable and often dangerous for the community. In expressing a view that a drug that is unlawful is dangerous, I echoed federal law. Nor is there, to my knowledge, a legitimate pro-methamphetamine constituency in the public. *See Gomes v. Univ. of Me. Sys.*, 365 F. Supp. 2d 6, 31-32 (D. Me. 2005) (rejecting a claim that the Chair of a university disciplinary panel, who had previously advocated against sexual assault, was biased against a student charged with sexual assault because "[t]here is not exactly a constituency in favor of sexual assault").

Second, the sources for my comments include my knowledge, experience, and observations concerning the District's caseload, innumerable criminal proceedings, including sentencings, over more than eight years of judicial service, and the undeniable dangers to the people of this District posed by addiction and drug

trafficking.  My views are the very definition of those derived from the performance of official judicial duties.[2]

Third, my statements are entirely general in nature and not in any way case specific.  I did not and would not comment on any matter pending before me as a judge.   At the time of the newspaper interview, I did not know Mr. Corbin, did not know about his arrest, and knew nothing about the circumstances that led to the arrest and later indictment.[3]  I bear no personal ill-will whatsoever against him.  He is, as far as I am concerned, no different than any defendant charged with a federal crime and is presumed innocent.  As this charge proceeds through the Court, I have the obligation to render fair and impartial justice, which I will perform without favoritism toward or bias against Mr. Corbin.  If he is acquitted of the pending charge, it will be my duty to discharge him; if convicted, it will be my duty to sentence him.

Fourth, judges are not required to remain publicly mute.  To the contrary, Canon 4(A) authorizes judges to "speak, write . . . and participate in . . . law-related activities."   Furthermore, the Commentary to Canon 4(A) provides that, as a "person specially learned in the law, a judge is in a unique position to contribute to the improvement of the law . . . ."  *See Burton v. Am. Cyanamid*, 690 F. Supp. 2d 757, 762-63 (E.D. Wis. 2010).  It should come as no surprise that a federal judge who routinely sentences people for serious federal violations, ranging from the

---

[2] The assertion that I was unduly influenced by a GOA memorandum merits no discussion.  Judges are not required to sequester themselves from society in the unrealistic and unnecessary fashion that Mr. Corbin's argument supposes.

[3] On March 8, 2011, I approved the seizure of a vehicle that was allegedly involved in this case but Mr. Corbin makes no claim concerning that approval.  *Seizure Warrant* (Docket # 19).

possession of child pornography to bank robbery to the possession of methamphetamine, disapproves of the commission of serious federal felonies. It does not follow that to disapprove of crime means that a judge is incapable of being fair and impartial in determining whether a person committed one.

Justice Kennedy described the recusal test:

> [Section] 455(a) is triggered by an attitude or state of mind so resistant to fair and dispassionate inquiry as to cause a party, the public or a reviewing court to have reasonable grounds to question the neutral and objective character of a judge's rulings or findings. I think all would agree that a high threshold is required to satisfy this standard. Thus, under § 455(a), a judge should be disqualified only if it appears that he or she harbors an aversion, hostility or disposition of a kind that a fair-minded person could not set aside when judging the dispute.

*Liteky,* 510 U.S. at 557-58 (Kennedy, J. concurring). That I made a statement expressing concern about the dangers of an illegal drug cannot create the appearance of any deep-seated favoritism or antagonism sufficient to convince a reasonable person that I am unable to sit in fair judgment over Mr. Corbin's criminal case.

## B. Appearance of Impartiality

Where the facts are insufficient to support a claim of personal bias, the remaining analysis focuses on "whether the charge of lack of impartiality is grounded on facts that would create a reasonable doubt concerning the judge's impartiality . . . in the mind of the reasonable man." *Kelley*, 712 F.2d at 890 (quoting *United States v. Cowden*, 545 F.2d 257, 265 (1st Cir. 1976)). In the words of the First Circuit, "disqualification is appropriate only if the facts provide what an objective, knowledgeable member of the public would find to be a reasonable basis

for doubting the judge's impartiality." *In re United States*, 666 F.2d 690, 695 (1st Cir. 1981). "The trial judge has a duty not to recuse himself or herself, if there is no objective basis for recusal." *In re United States*, 441 F.3d 44, 67 (1st Cir. 2006). Mere suspicion of impartiality is not enough to secure a judge's disqualification; the standard necessarily balances "the need to secure public confidence through proceedings that appear impartial" with "the need to prevent parties from too easily obtaining the disqualification of a judge" and from "manipulating the system for strategic reasons, perhaps to obtain a judge more to their liking." *In re Allied-Signal, Inc.*, 891 F.2d 967, 970 (1st Cir. 1989).

The cases in this Circuit addressing statements made by judges to the media are few, and none addresses facts similar to those Mr. Corbin presents. *See, e.g., In re Boston's Children First*, 244 F.3d 164, 170 (1st Cir. 2001) (granting recusal under § 455(a) where trial judge made case-specific comments to media that could reasonably be construed as comments on merits of pending case). However, at least one other jurisdiction has addressed general, non-case-specific judicial statements to the media about the effects of certain crimes. *See United States v. Bauer*, 84 F.3d 1549, 1559-60 (9th Cir. 1997). In *Bauer*, the Ninth Circuit found no bias on facts strikingly similar to those here, namely that a judge was quoted in a published article as stating that he considered marijuana distribution a serious and pervasive problem. *See id*. The Ninth Circuit's view is consistent with the First Circuit's comment in *In re Boston's Children First* that § 455(a) "must not be read to create a

threshold for recusal so low as to make any out-of-court response to a reporter's question the basis for a motion to recuse."  244 F.3d at 171.

The facts presented by Mr. Corbin—a government memorandum about border security and my general statements to the media that drug trafficking from Canada is dangerous to society and methamphetamine will be difficult to eradicate if it takes hold in Maine—do not constitute "a reasonable basis for doubting the judge's impartiality" in the eyes of "an objective, knowledgeable member of the public."  *In re United States*, 666 F.2d at 695.  Mr. Corbin has failed, on both counts, to allege a factual basis sufficient to warrant my disqualification from presiding over his pending criminal case.

Finally, in his reply, Mr. Corbin makes the novel assertion that the Government had no right to file a responsive memorandum because to do so "places the Government in the role of advocate for Judge Woodcock, placing the Defendant in the untenable position of being Judge Woodcock's opponent."  *Def.'s Reply* at 1.  Mr. Corbin cites no authority for the proposition that if a defendant moves for recusal, the Government may not express a view on the merits of the motion.

From my perspective, Mr. Corbin misapprehends the question here.  I do not take his motion to recuse personally.  It is a legal matter and, in making my assessment, I should benefit by receiving the views of the parties.  In filing the motion, Mr. Corbin is not opposing me; he is defending the case.  In filing a response, the Government is not defending me; it is prosecuting the case.  It is common practice for both parties to be heard on a motion for recusal to give the

Court the benefit of more than one viewpoint. *See In re United States*, 441 F.3d 44, 49 (1st Cir. 2006) (referencing Defendant's opposition to Government's motion to recuse); *In re Basciano*, 542 F.3d 950, 954-55 (2d Cir. 2008) (referencing Government's memorandum in opposition to Defendant's motions to recuse). I reject his argument that the Government should not have filed a response.

## III. CONCLUSION

The Court hereby DENIES the Defendant's Motion for Disqualification (Docket # 28).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 14th day of November, 2011